## HUGH STAPP *v.* THE STATE.

1. PRESUMPTION OF INNOCENCE—CHARGE OF THE COURT.—In a trial for murder the court charged the jury that the accused was presumed to be innocent until his guilt was established by competent evidence, but further added that, after his guilt is established by such evidence, the presumption of innocence no longer obtains. *Held*, that this latter clause is incorrect. The doctrine of reasonable doubt should have been enunciated in connection with the presumption of innocence, conformably to Article 640 of the Code of Criminal Procedure. Pasc. Dig., Art. 3105.

2. UNCOMMUNICATED THREATS may be admissible in evidence. See the statement of this case in connection with the opinion. , Pasc. Dig., Art. 2270.

APPEAL from the District Court of Victoria. Tried below before the Hon. T. C. BARDEN.

The appellant was indicted at the March term, 1876, of the court below for the murder of Canuta Figeroa, by shooting him with a Winchester rifle, on the 5th of January, 1876.

It appears from the evidence that, on the day of the killing, the accused, the deceased, and some others were at Murphy's store, near the San Antonio river, and while there were apparently on friendly terms with each other. Late in the evening the accused and one Vicente de la Garza were seen riding eastwardly from the store, and on the road

to their homes, and on their way stopped very briefly at
the house of Don Carlos de la Garza, and had some
little conversation with the witness Alexander de la Garza,
when they rode on. Within a few minutes afterwards the
deceased rode up to the same house, from the same direc-
tion, having in his hand a six-shooting pistol, cocked. He
appeared to be angry, and, after some talk with Alexander
de la Garza, rode rapidly on in the same direction taken by
the accused and his companion. Witness went in to supper,
and while at table heard two shots in rapid succession, in
the direction taken by the parties, and about the same
moment heard the voice of the accused, saying: " What do
you want? Do you want a drink of whisky?" The witness
next heard the clatter of two horses running at full speed
past the house and towards the store, and soon heard two
shots, succeeded by a defiant Mexican yelp, which he recog-
nized as in the voice of the deceased, and soon afterwards
heard two more shots. Soon after the last shots the
accused again rode up to the house, and, calling the witness
out, asked him if he had seen the man running down the
road, and, on witness replying that he had not, asked him
if he knew who the man was, to which the witness responded
that he knew him to be Canuta Figeroa by his yelp; where
upon the accused said, " That poor devil is dead and in the
river," and added that he was sorry for what he had done,
but that deceased had imposed on him, and he had to do it.
Deceased was found in the edge of the river, on the west
side, mortally wounded by two gun shots, and died the
same night.

By the witness Alexander de la Garza the defense pro-
posed to prove that, when the deceased first rode up to the
house and spoke to witness, he inquired for the man who
had previously been speaking to witness, and said he wanted
to see that man. Witness asked him what man he meant,
and if it was Hugh Stapp; to which the deceased replied,

"Yes;" adding, "That same man, that brave man, is loaded down with arms; I will take him out of the way;" and telling witness he was a coward for letting Stapp run over him. Whereupon he rode on after Stapp, as already related. The court excluded this conversation because it purported to show threats, and there was no evidence that such threats were heard by, or communicated to, the accused, and because there was no evidence that the deceased, at the time of the killing, manifested any intention to execute the threats. To this ruling the accused reserved exceptions.

It was in proof that the accused was armed with a pistol and a Winchester rifle, or a carbine. Vicente de la Garza, the companion of the accused, was examined, and testified that he heard, but could not say who fired, the first shots when they were overtaken by the deceased; nor was there any evidence proving by whom they were fired. Nor does the proof account for any cause of animosity between the accused and the deceased, unless it be sufficiently accounted for by the fact that they and their companions had been drinking at the store the evening of the killing.

The verdict was murder in the second degree, with five years' confinement in the penitentiary.

*Glass & Callender*, for the appellant.

*George McCormick*, Assistant Attorney General, for the State. This was a case of uncommunicated threats. The introduction of evidence of previous threats, and, incidentally, of the character of the deceased making such threats, is permissible under the following circumstances, and no other:

1st. When, as under our statute, the accused seeks to justify the killing; and, in this instance, it must be shown that the threats have been communicated to the accused before the killing, and that the person slain, by some act

done at the time, manifested an intention to carry his threats into execution. See Pasc. Dig., Art. 2270; *Lander* v. *The State*, 12 Texas, 471; *Johnson* v. *The State*, 27 Texas, 767; *Irwin* v. *The State*, 43 Texas, 236; *Horbach* v. *The State*, 43 Texas, 242.

2d. When the matter in dispute is: Who began the affray that resulted in the death of the party? or, to state it in other words: *Who was the assailant?* Whart. on Hom., secs. 694, 695; *The People* v. *Stokes*, 53 N. Y.; and the numerous cases cited in foot-note 2, p. 597, Whart. on Hom.

While, then, under our statute, threats may be shown to justify the killing, after some act done by the deceased showing an intention to carry them out at the time, which must be proved to have been communicated to the accused, yet the law will not permit uncommunicated threats to be shown to justify the killing, but to show, as a matter of fact, who began the assault, when that question is doubtful.

Then, if in the case at bar the question as to who begun the assault was material, and the fact whether it was Stapp or the deceased doubtful, the threats might have been introduced, but under no other circumstances.

Admit, then, for the sake of argument only, that the first assault was made by the deceased, as contended by counsel, and the facts would be about these: Figeroa rode after Stapp and fired his pistol at him, thus becoming the assailant; Stapp repulsed the attack, and Figeroa fled. Stapp pursued him and fired twice, missing him; Stapp continued the pursuit, following the fleeing man fully 500 yards, and did not stop until he had killed him. Was this a case of self-defense, or could the killing, under any such circumstances, be reduced to manslaughter? I think not.

In this case the character of the deceased was immaterial—evidence of character only being permitted to go to the jury when the circumstances of the case raise a doubt whether the prisoner acted in self-defense, or to show that the

47

defendant was justified in believing himself in danger, when the circumstances of the case are equivocal. *The People* v. *Muncey*, 10 Cal. 309; *Franklin* v. *The State*, 29 Ala. 17; *Pritchett* v. *The State*, 22 Ala. 39; *The State* v. *Dumphey*, 4 Minn. 438.

WINKLER, J. We deem it unnecessary to notice specially the several propositions involved in the assignment of errors. The first material error we find in the record deserving of notice is the exclusion of the evidence of Alexander de la Garza. The testimony of this witness, as set out in a bill of exceptions in the transcript, taken at the trial, to the ruling of the court, was admissible and should have gone to the jury for what it was worth.

Secondly, the charge of the court on the subject of implied malice, as applied to murder in the second degree, is indefinite, and wanting in that clearness necessary to the proper understanding and application of the term. Other portions of the charge are objectionable in that they trench on the province of the jury to determine what has been proved by the witnesses, and are calculated to confuse the jury.

The following charge is incorrect in the latter portion: "You are instructed that the prisoner is presumed to be innocent until his guilt is established by competent evidence; after the guilt of a prisoner, for crime, is established by such evidence, then such presumption of innocence no longer pertains."

The law is that "a defendant in a criminal cause is presumed to be innocent until his guilt is established by legal evidence, and, in case of reasonable doubt as to his guilt, he is entitled to be acquitted" (Pasc. Dig., Art. 3105), and the jury should so have been instructed.

It is the duty of the judge, in felony trials, to instruct the jury in writing, in which he shall distinctly set forth the law

applicable to the case. It is not allowed a judge to discuss the facts. It is his duty to state plainly the law of the case. Pasc. Dig., Arts. 3059, 3060.

We see no error in refusing the charge asked by the defendant, and agree with the judge that " there was no evidence to warrant it."

These errors were saved by proper bills of exception, and enter into the motion for new trial and in the assignment of errors.

The judge should have admitted the testimony of Alexander de la Garza (*Stokes* v. *The People*, 53 N. Y., cited in Cases of Self-Defense, 927 ; *Horbach* v. *The State*, 43 Texas, 242), and should have sustained the defendant's motion for new trial ; and for these reasons the judgment rendered in this cause in the district court is reversed and the cause remanded.

*Reversed and remanded.*